# Eiseman, Kaye Company, Appellant, v. Charles A. Shepardson et al., Appellees.

## Gen. No. 31,750.

1. LANDLORD AND TENANT—*liability of creditors' committee for debtor's rent during their supervision.* A creditors' committee was not liable for rent of the debtor's premises under the theory that they were in possession of the demised premises under a contract between the debtor partnership and the committee giving the committee supervision over the affairs of the firm during a period of liquidation for the benefit of creditors, where it appeared that none of the property of the firm was vested in the committee; that the operation of the business rested with the firm subject only to the supervision and consent of the committee; that the bank account of the firm was to remain with the firm's old bank; that the only curtailment of the power of the firm to pay out money was that one of the committee must countersign checks; that the lease was not assigned; that the firm remained in possession of the premises, and that the single committeeman served with process was never on the premises except to supervise under the terms of the contract; and it is immaterial that the committee were designated as ''trustees'' in the contract.

2. TRUSTS—*when creditors' committee not trustee for debtor.* Under a contract between a partnership and a creditor's committee giving the committee supervision over the affairs of the firm during a period of liquidation for the benefit of creditors, held that the committee were not trustees for the firm where the title to none of the firm property ever was vested in them either by the contract or by any other agreement.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. JOHN J. ROONEY, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1927. Affirmed. Opinion filed December 21, 1927.

LOWENHAUPT & WOLFF, for appellant.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, for appellee Charles A. Shepardson; EDWARD R. JOHNSTON and HENRY JACKSON DARBY, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff sued the three defendants on a claim for $3,000 for seven monthly instalments of rent of the second floor of the premises Nos. 23–31 South Franklin Street. The defendant, Charles A. Shepardson, was the only one of the three served with process, and the suit was tried by agreement of the parties before the court. There was a finding on the issues for defendant, Shepardson, and a judgment on that finding of *nil capiat* and for costs, and plaintiff brings the record here for review, and asks for a reversal of the judgment of the trial court, and a judgment of this court in its favor for the amount of its claim with interest.

The theory of plaintiff's claim is that defendants were liable for the rent claimed, because during the time for which such claim is made they were in possession of the demised premises. The liability is predicated upon a contract of date December 22, 1923, made between Henry Friend and Henry Morris of Chicago under the firm name of Friend and Morris of the first part, and Robert S. Berryman of New York City, and Edward Hiler of the same place, and Charles A. Shepardson, the appellee, of Chicago, of the second part in said contract "called trustees." The contract recited the fact that Friend and Morris were engaged in the business of buying and selling woolens, silks and velvets at the demised premises in Chicago, and that they and their creditors had agreed by another instrument of same date with the contract to extend time of payment of their respective claims against said firm to June 22, 1924, in order that said firm might, during such term of extension, liquidate its affairs for the benefit of all creditors; that it was contemplated by the terms of said written extension that there should be a creditors' committee of three to have supervision over the affairs of said firm during the period of liquidation; therefore in consideration

of the premises and for the purpose of carrying said written extension into effect and $1.00 and other considerations the first parties, viz, Friend and Morris, appoint Robert S. Berryman and Edward Hiler of New York, and Charles A. Shepardson of Chicago, trustees for the purposes in said contract set forth:

1. First parties, Friend and Morris, agree to sell or otherwise convert into cash all their stock in trade, furniture and fixtures, accounts and bills receivable, and all other assets of every nature and description belonging to said business, and to liquidate the business of Friend and Morris under the supervision and direction of the trustees, and at such times and in such manner, as said trustees shall direct, and that in carrying out the foregoing the first parties Friend and Morris shall collect such parts of such property and assets as may be outstanding, and sell and convert into money such parts thereof as do not consist of money, and convert all of said property into cash, and apply all the moneys received by them first to the payment of all costs incurred in the performance of this agreement and purchase of merchandise and other liabilities, and next to the payment ratably among creditors of said Friend and Morris upon terms and conditions "hereinafter provided." In case trustees shall direct, first parties Friend and Morris shall carry on said business in the name of said firm, in whole or in part, and to such extent as they shall be directed to do, with a view, however, of winding up the affairs of the business; that for the purpose of carrying out the terms of said agreement the trustees, or Friend and Morris, with the consent of the trustees, shall have power to employ such assistants as may be necessary, to buy merchandise and other necessary chattels, to borrow money, either with or without security and to incur such expense or other obligations as may be deemed expedient by them, and all liabilities so incurred shall be treated as expense of liquidation and

shall be paid before creditors become entitled to distributive share of funds realized or prior to the payment of claims of any of said creditors.

2. Friend and Morris agree to execute and deliver all instruments in writing necessary for carrying into effect this agreement.

3. Friend and Morris agree not to sell, etc., any of the firm property without consent of said trustees; that in carrying out the terms of the agreement Friend and Morris shall employ only such clerks, salesmen or assistants as may be authorized by the trustees; Friend and Morris agree to manage liquidation of business or carry on business as trustees shall direct for a salary of $650 a month each, payable out of the proceeds of liquidation; trustees may during continuance of agreement increase salaries or compensation to be paid to Friend and Morris.

4. Friend and Morris shall make in proper books full and true entries of all moneys received or expended by them, and of all transactions connected with said business, and shall out of moneys received by them pay all rents, taxes, expenses and other liabilities incurred in connection with the liquidation and in carrying out same, under directions of trustees; all moneys coming into hands of Friend and Morris shall be deposited in the regular bank account of said firm with Greenebaum Sons Bank and Trust Company, and shall be paid out or withdrawn upon the check of said firm signed by Morris or Friend and countersigned by one of said trustees.

5. The agreement is made for the equal benefit of all creditors of Friend and Morris and all payments to creditors shall be made ratably at times and in manner as trustees shall direct; that whenever in course of liquidation or carrying on of said business trustees shall be of opinion that there is a sufficient sum of money on hand they may direct Friend and Morris to pay a dividend to their creditors, in such

amount as trustees shall determine, in which event Friend and Morris shall pay dividends in checks as aforesaid, countersigned by one of trustees or person appointed by one of them. Like dividends shall be paid from time to time at direction of trustees; that trustees may in their discretion cause claims of creditors against said firm who have not signed said written extension for full amount of their claims to be paid in full or in part other than pro rata with other creditors whenever trustees shall deem it necessary or advisable for protection of creditors who shall have joined in said written extension.

6. The agreement to continue in force until assets and property of firm have been fully liquidated and funds realized therefrom applied to the payment of the claims of creditors, provided, however, that in case claims of said creditors shall be fully discharged or paid prior to full liquidation of said properties and assets as aforesaid, then agreement to terminate as soon as all of said claims shall have been fully paid and discharged; and further that it is the intent of this agreement that all assets and properties of business shall be converted into cash as soon as possible, and after payment of all expenses incurred in connection therewith to apply funds realized therefrom to payment of claims of creditors of first party, viz, Friend and Morris.

7. If any surplus remains after payment of creditors it shall be paid over to Friend and Morris by check duly countersigned by one of trustees, and all of assets and property not converted into cash shall be and remain property and assets of Friend and Morris free and clear of all terms and conditions of said agreement.

8. Trustees shall have full power to direct the manner in which business shall be liquidated or wound up and to fix within their absolute discretion time, amount, place and other conditions at or upon which said

property or assets, or any of them, shall be sold or disposed of and said business liquidated; that Friend and Morris agree to comply with all instructions and directions of trustees in carrying out the agreement.

The foregoing contract was signed by Henry Friend and Henry Morris doing business under the firm name of Friend and Morris, and by Robert S. Berryman, Edward Hiler and C. A. Shepardson, trustees, each signing under seal.

It will be observed from the foregoing recitations that no part of the property or assets of the firm of Friend and Morris was vested in the so-called trustees; that the operation of the business rested with the firm subject only to the supervision, direction and consent of the so-called trustees; that the bank account of Friend and Morris was to remain, as it had been, in the banking house of Greenebaum Sons Bank & Trust Company, and that the only curtailment of the power of Friend and Morris to pay out the money from their bank account was that one of the trustees, so-called, must countersign any and all checks signed by Friend and Morris against their bank account in the Greenebaum bank. The lease was never assigned by the contract or any other agreement which appears in evidence; that Friend and Morris remained in possession during all of the time of the liquidation of the business and that neither appellee here, nor the so-called trustees, ever went into the possession of the demised premises. The possession was always the possession of Friend and Morris until the firm business had been liquidated. There is nothing in the contract which by construction can be held to have conveyed to the so-called trustees any of the assets or business of Friend and Morris, nor was there any independent ownership or possession of the demised premises by the so-called trustees, or the appellee in this appeal. There is nothing in the evidence to show that appellee, or any of the so-called trustees under the

contract with Friend and Morris, ever signed a check upon the bank account in the Greenebaum bank or any other bank account of Friend and Morris; all checks were signed by Friend or Morris and countersigned by the appellee, who was a resident of Chicago, while his cotrustees were residents of New York. There is no evidence that appellee or his cotrustees, or either or any of them, ever opened a bank account in their own names or any of their names, in which the moneys of Friend and Morris were deposited or checked out by them or either of them.

It appears from the evidence and from plaintiff's brief that Henry Friend, of Friend and Morris, had a son Julius; that after the contract above recited was made, Julius Friend went into the business of manufacturing rubber aprons, and occupied space in the demised premises from February 15 to December 20, 1924; that he used the space for a small office and display of samples; during this time he paid rent at the rate of $35 a month; checks for this rent were made payable to Friend and Morris and these checks were deposited with Greenebaum Sons Bank & Trust Company to the credit of Friend and Morris; and Julius Friend testified that he gave his rent checks to one of the creditors or one of the firm, whoever happened to be on the premises at the time. He paid four months rent and all of his rent checks went to the credit of Friend and Morris in the Greenebaum bank; and there is no evidence that appellee or either of his cotrustees ever signed any check upon the bank account of Friend and Morris in the Greenebaum bank or any other bank; that as provided by the contract all the checks drawn by Friend and Morris were countersigned by appellee Shepardson in accordance with that contract. All rent that was paid to plaintiff after the execution of the contract between Friend and Morris and defendants was paid by the checks of Friend and Morris and drawn on their account in the Greenebaum

Bank, which checks were simply countersigned by appellee Shepardson.

It is clear from the testimony of Shepardson that he never occupied the demised premises, or that he ever was in the premises, except as he was there under the terms of the agreement to supervise what Friend and Morris did in the liquidation of their business. The duty of the defendants, so-called trustees, under the contract was merely to supervise the liquidation of the firm of Friend and Morris. While called trustees in the contract, such designation is a misnomer. They acted as a creditors' committee under the agreement in a supervisory capacity only. They were not trustees because the title to none of the property or assets of Friend and Morris was ever vested in them, or any of them, either by the contract or by any other agreement. At no time did the defendants exercise any proprietary interest either in the business of Friend and Morris, or the assets of the business, and there is not one scintilla of evidence from which it can be rightfully held that the defendants were vested with a proprietary interest, or that their relationship to the liquidation of the firm of Friend and Morris was anything but that of a supervisory nature, which required the assent at least of one of the defendants to the firm's transactions in liquidating their business affairs; they simply looked on and supervised what Friend and Morris did in the matter of the liquidation and when their actions demanded the assent of one of the defendants, that assent was given by appellee Shepardson.

We are satisfied that the finding of the trial judge is fully sustained by the evidence in the record. Therefore the judgment of the municipal court is affirmed.

*Affirmed.*

TAYLOR, P. J., and WILSON, J., concur.